IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-01603-WDM-BNB

HAROLD LEE UHEY, JR.,

Plaintiff,

v.

JOHN E. POTTER, Postmaster General of the United States Postal Service,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Defendant's Motion for Summary Judgment** [Doc. #56, filed 4/4/06] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant on both of the claims against him.

**STANDARD OF REVIEW**

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific evidence showing that there is a genuine issue for trial. Id. at 324.

## UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff was formerly employed by the United States Postal Service ("USPS") at the Colorado Springs Mail Facility. *Motion*, p. 2, ¶ 1; *Second Amended Complaint* [Doc. #41, filed 9/10/04], p. 1.

2. On August 6, 1998, the plaintiff was issued a "Notice of Charges--Proposed Removal" in which he was notified "that it is proposed to remove you from the U.S. Postal Service no earlier than thirty (30) days from the date you receive this notice." *Motion*, p. 2, ¶ 2 and Exhibit 1. The Notice charged the plaintiff with "Unacceptable Conduct/Physical Altercation" regarding an altercation with another employee, Tom Lydon, on July 21, 1998. Id. at Exhibit 1.

---

[1] The plaintiff complains that the defendant has not provided him with the evidence he needs to substantiate his statements of fact. *Response*, pp. 10, 12. The plaintiff has not sought to compel any discovery in this case, nor has he notified the Court in any manner that he is lacking necessary evidence. The plaintiff's unsupported factual statements do not create a material fact dispute.

3. On November 10, 1998, the plaintiff was issued a "Letter of Decision--Proposed Removal" which notified him that he would be removed from the USPS effective November 20, 1998. Id. at p. 2, ¶ 3 and Exhibit 2.

4. On April 4, 2001, the plaintiff requested an appointment with an EEO counselor. Id. at p. 2, ¶ 4 and Exhibit 3; *Plaintiff's Response to Defendant's Motion for Summary Judgment* [Doc. #60, filed 5/4/06] (the "Response"), Exhibit 13. The request asserts that the plaintiff was discriminated against because of a "permanent disability due to on the job injury." *Motion*, Exhibit 3, p. 1, § B; *Response*, Exhibit 13, p. 1, § B. The request further asserts that the plaintiff was terminated after an altercation with Thomas Lydon. Id. at p. 2, § C3. The request seeks reinstatement to the USPS and payment of lost wages. Id. at p. 2, § E. The request is designated as No. 1E801-006201. Id. at p. 1.

5. The plaintiff was provided with several forms at the interview, including a Notice of Right to File Mixed Complaint. *Motion*, p. 2, ¶ 5 and Exhibit 4, p. 3.

6. The plaintiff submitted an "EEO Complaint of Discrimination in the Postal Service" which states that the alleged acts of discrimination occurred at the Colorado Springs General Mail Facility between December 12, 1997, and August 11, 1998. *Response*, Exhibit 13, third consecutive page. The complaint asserts the following:

> After suffering an injury on 12 Dec 1997, began receiving unjust disciplinary actions, accusations of falsifying an injury, and had my restrictions and limitations given by my doctor's [sic] ignored by management. Management violated my FMLA rights, disregarded workman's comp protections/sidestepped APWU bylaws. A hostile work environment was created and eventually I was terminated under false charges.

Id.

7.     On January 9, 2002, the USPS issued a "Final Agency Decision" dismissing the plaintiff's EEO Complaint as untimely because he failed to contact an EEO counselor within 45 days of the alleged discrimination as required by 29 C.F.R. §§ 1614.105 and 1614.107. *Motion*, pp. 2-3, ¶ 6 and Exhibit 5. The Final Agency Decision states:

> A review of the EEO counselor's report indicates that the complainant was issued a Notice of Charges - Proposal [sic] Removal on August 6, 1998, for Unacceptable Conduct / Physical Altercation, and a Letter of Decision supporting the charges on November 20, 1998. The counselor's report also notes the complainant as stating he received "all paperwork" from the agency and thus became aware of his termination and discrimination only in "March of 2000", as he was homeless and did not have an address. Upon being advised by the EEO counselor that his complaint may be rejected for untimeliness, the complainant stated he was trying to get the American Postal Workers Union (APWU) to help him, and it had taken him this long to gather documents on his termination.
>
> The complainant first sought EEO counseling on April 4, 2001 on the issue of his removal from the agency. Considering March 31, 2000 as the date he first became aware of discrimination, the complainant's request for counseling was 324 days after the requisite 45 days to request EEO counseling.
>
> A review of the EEO Counselor's report also indicates that EEO posters were on display at the Colorado Springs Processing and Distribution Center, on the employee bulletin boards, in August 1998, when the "Notice of Charges--Proposed Removal" was issued to the complainant. The EEO posters had the telephone number, address, and the 45-day time frame requirement, for contacting the Postal Service's EEO Office. The posters were posted where employees could reasonably be expected to see them.
>
> In accordance with EEOC regulations at 29 C.F.R. § 1614.107(b), EEO Case number 1E-801-0062-01 is dismissed as being untimely since the complainant sought EEO counseling more than 45 days after he became aware of the discrimination and did not comply with the prescribed regulation noted above.

Id. at Exhibit 5, p. 2.

4

8. On appeal, the Equal Employment Opportunity Commission ("EEOC") affirmed the USPS's dismissal of the plaintiff's complaint. Id. at p. 3, ¶ 7 and Exhibit 6. The EEOC's decision states:

> Upon review, the Commission finds that the agency's decision dated January 9, 2002, dismissing complainant's complaint due to untimely EEO Counselor contact is proper pursuant to 29 C.F.R. § 1614.107(a)(2). In his complaint, complainant alleged that he was terminated from his employment with the agency for unacceptable conduct/physical altercation. The record indicates that complainant was allegedly terminated on November 20, 1998. On appeal, complainant indicates that he did not receive a termination notice until March 2000. The record indicates that complainant, however, did not contact an EEO Counselor with regard to his complaint until April 4, 2001, which was beyond the time limit set by the regulations. Complainant states that after he received the termination notice, he tried to obtain supporting evidence concerning the alleged termination and sought assistance from a union. Complainant indicates that in December 2000, he put together all of the information he obtained to substantiate his case, and he was ready to pursue the EEO complaint process. It is noted that complainant, however, does not explain why he did not contact an EEO Counselor in December 2000, and waited until April 2001. The Commission finds that complainant's trying to pursue the alleged matter through a union and to obtain supporting evidence concerning the matter do not toll the running of the requisite time limit. Based on the foregoing, the Commission finds that complainant fails to present adequate justification to warrant an extension of the applicable time limit for contacting an EEO Counselor.

Id. at Exhibit 6.

9. The plaintiff requested reconsideration of the EEOC's decision, which was denied on May 13, 2003. Id. at p. 3, ¶ 8 and Exhibit 7.

The plaintiff filed a Title VII Complaint (the "Complaint") on August 22, 2003. The Complaint, although not a model of clarity, asserts disability discrimination based on an on-the-job

injury to the plaintiff's elbow, *Complaint*, p. 14, which ultimately resulted in the plaintiff's termination. The plaintiff was ordered to file an amended complaint setting forth his disability claim under the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act. *Order issued July 29, 2004* [Doc. # 30, filed 7/30/04]. The plaintiff supplemented his Complaint on August 19, 2004 [Doc. #36] and on September 10, 2004 [Doc. #41]. The supplements assert the plaintiff's disability claim under the ADA and the Rehabilitation Act. The plaintiff also asserts a claim under the Family and Medical Leave Act ("FMLA").

## ANALYSIS

### Disability Claim

As a preliminary matter, section 501 of the Rehabilitation Act provides a federal employee's exclusive remedy for employment discrimination based on a disability. Williams v. Widnall, 79 F.3d 1003, 1005 (10th Cir. 1996). See also Johnson v. United States Postal Serv., 861 F.2d 1475, 1477 (10th Cir.1988); Coleman v. Darden, 595 F.2d 533, 538 (10th Cir.1979). The Rehabilitation Act extends the "remedies, procedures and rights" available under Title VII, 42 U.S.C. § 2000e-16, to federal employees with disability discrimination claims. 29 U.S.C. § 794a(a)(1). Liberally construed, the Complaint's disability claim is asserted pursuant to the Rehabilitation Act, not the ADA.

The defendant asserts that the plaintiff's disability claim is barred because the plaintiff failed to exhaust his administrative remedies as to this claim. *Motion*, pp. 4-6.

The Rehabilitation Act encompasses Title VII's exhaustion requirement. Woodman v. Runyan, 132 F.3d 1330, 1341 (10th Cir. 1997). Pursuant to statutory authority, the EEOC issued rules and regulations implementing the provisions of Title VII. 42 U.S.C. § 2000e-16(b). The

exhaustion requirements for claims of discrimination under Title VII are specified in 29 C.F.R. § 1614.101 *et seq.*  29 C.F.R. § 1614.103.[2]

The regulations require that a federal employee pursue informal and formal resolution. Id. at §§ 1614.105, 1614.106. Prior to filing a complaint, the employee must first try to informally resolve the matter by consulting an EEO counselor within 45 days of the alleged discriminatory act. Id. at § 1614.105(a). If the matter is not resolved, the counselor must inform the employee of his right to file a discrimination complaint. Id. at § 1614.105(d). A complaint must be filed within 15 days after this notice. Id. at § 1614.106(b). The employee has the right to appeal the final action on, or the dismissal of, the complaint. Id. at § 1614.106(e)(1).

The agency or the Commission shall extend the 45 day limit under the following circumstances:

---

[2]In Harms v. Internal Revenue Service, 321 F.3d 1001 (10th Cir. 2003), the circuit court stated:

> The Civil Service Reform Act provides an alternative mechanism by which a federal employee may assert Title VII and Rehabilitation Act claims that arise out of adverse employment actions which are also appealable to the [Merit Systems Protection Board ("MSPB")]. Such cases are referred to as "mixed cases" because the alleged unlawful discrimination is either related to or stems from an employment action over which the MSPB has jurisdiction. 29 C.F.R. § 1614.302(a); 5 C.F.R. § 1201.3. Under the CSRA, a federal employee may file a mixed case complaint with the agency's EEO department or a mixed case appeal with the MSPB. 5 U.S.C. § 7702(a); 29 C.F.R. § 1614.302; 5 C.F.R. §§ 1201.151-1201.157. A mixed case complaint and mixed case appeal, however, cannot be pursued simultaneously. 29 C.F.R. § 1614.302(b).

Id. at 1005. The record establishes that the plaintiff filed a mixed case complaint with the USPS's EEO department; he did not file a mixed case appeal with the MSPB. *Motion*, Exhibit 4, p. 1; *Response*, Exhibit 13, third consecutive page.

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

Id. at §1614.105(a)(2).

Because the regulation vests the agency and the Commission with the discretion to extend the 45 day time limit, the Tenth Circuit Court of Appeals has held that a complainant's failure to *timely* file an administrative charge within the 45 day time limit is not a jurisdictional bar to filing suit. Sizova v. National Institute of Standards & Technology, 282 F.3d 1320, 1325 (10th Cir. 2002). Instead, the 45 day time limit may be tolled under appropriate circumstances. Id. However, a complainant's failure to file an administrative charge *at all* is a jurisdictional bar to suit. Id.

The record establishes that (1) on November 10, 1998, the plaintiff was issued a notice stating that he would be removed from the USPS effective November 20, 1998; (2) the plaintiff did not request an appointment with an EEO counselor until April 4, 2001; (3) the USPS dismissed the plaintiff's EEO Complaint as untimely because the plaintiff failed to contact an EEO counselor within 45 days of the alleged discrimination as required by 29 C.F.R. §§ 1614.105; (4) in dismissing the plaintiff's case as untimely, the USPS extended the 45 day time limit from 45 days after the plaintiff's November 20, 1998, termination until March 31, 2000, based on the plaintiff's contention that he did not become aware of his termination and discrimination until "March of 2000" because he was homeless and without an address; (5) the EEOC affirmed the

USPS's decision and its extension of the 45 day time limit; (6) the plaintiff requested a further extension of the time limit on the basis that he was attempting to obtain supporting evidence to substantiate his case and was seeking assistance from the union; (7) the EEOC found that the plaintiff's attempt to obtain supporting evidence and seek assistance from the union did not toll the 45 day time limit because the plaintiff had all of his evidence gathered in December 2000 and was ready to pursue the EEO complaint process at that time, but waited until April 2001 to contact an EEO counselor.

Thus, the USPS and the EEOC did not require the plaintiff to file his EEO complaint within 45 days of his November 20, 1998, removal from the USPS. Instead, they allowed the plaintiff 452 days, until March 31, 2000. Nevertheless, the plaintiff still ran afoul of the time limit by 369 days--from March 31, 2000, until he contacted the EEO counselor on April 4, 2001. He asserts "good cause" for his untimely contact with the EEO on the following bases:[3]

1. The plaintiff underwent a 72 hour lock-down observation during the period January 4 through 7, 1998, and was diagnosed with major depression. He was prescribed Prozac and Ambien, and further therapy was recommended. He does not recall how much additional care he received or how long he continued to seek psychiatric help. *Response*, p.1.

---

[3] The plaintiff cites 5 C.F.R. § 1201.114(f) in support of his request for tolling. *Response*, p. 1. Section 1201.114(f), however, addresses late filings to the MSPB. As noted in note 1, supra, the plaintiff did not opt to proceed through the MSPB. Therefore, section 1201.114(f) is not applicable to the plaintiff's case. More importantly, however, the plaintiff is not seeking tolling before the MSPB. He is seeking equitable tolling in the federal court. The standards for equitable tolling in this Court are defined by the case law in this circuit.

    2. The plaintiff submitted a note to his USPS supervisor on July 11, 1998, which contained an "attempt" to "express his need for help, his confusion by what the USPS was doing to him and his attempt to keep his emotions in check " Id. at p. 2.

    3. The plaintiff submitted two letters to his USPS supervisor in August 1998. These letters were additional attempts to understand the USPS's actions against him and to express his "confusion, emotional state, need for help and state of mind w/use of medication since he was injured." He also expressed his innocence of the physical altercation charges against him. Id.

    4. The plaintiff attended EAP counseling in August 1998 with depression, anger at USPS management, and confusion. He was referred for psychiatric care and Prozac. Id.

    5. After August 1998, the plaintiff was emotionally unable to "deal with his current situation" and left Colorado for 14 months. Id.

    6. The plaintiff suffered an emotional breakdown and was admitted into the hospital in the summer of 2003. Id.

    7. The plaintiff was diagnosed with dysthymia[4] in April 2006. Id. at p. 3 and Exhibit 6.

    8. The plaintiff filed "an EEO through his union" on June 8, 1998, citing denial of FMLA protection. Id. at p. 3.

The plaintiff appears to be seeking equitable tolling from March 31, 2000, until April 4, 2001, on the basis of mental incapacity. *Response*, p. 3, second full paragraph. The plaintiff bears the burden of proving that he is entitled to equitable tolling. Olson v. Federal Mine Safety and Health Review Comm'n, 381 F.3d 1007, 1014 (10th Cir. 2004). The application of equitable

---

[4]Dysthymia is defined as depression. *Webster's Encyclopedic Unabridged Dictionary of the English Language* (Deluxe Edition 2001).

10

tolling rests within the sound discretion of the district court. Purrington v. University of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993), *abrogated by* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). "Courts have narrowly construed equitable exceptions to the time limitations set out in Title VII." Biester v. Midwest Health Services, Inc., 77 F.3d 1264, 1267 (10th Cir. 1996).

> The Tenth Circuit has generally recognized equitable tolling of Title VII time limitations only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period. For instance, equitable tolling may be appropriate where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts. Likewise, if a plaintiff is actively misled, or has in some extraordinary way been prevented from asserting his or her rights, we will permit tolling of the limitations period.

Id.

The Tenth Circuit has never held that mental incapacity entitles an individual to equitable tolling. Harms v. Internal Revenue Service, 321 F.3d 1001, 1006 (10th Cir. 2003). However, the Tenth Circuit has in two separate cases noted that other courts which applied the doctrine to mental incapacity have limited its application to "exceptional circumstances." Biester, 77 F.3d at 1268; Harms, 321 F.3d at 1006.[5] In Biester, the Tenth Circuit cited the following cases when discussing "exceptional circumstances":

> Lopez v. Citibank, N.A., 808 F.2d 905, 906-07 (1st Cir.1987) (where the plaintiff was able to pursue his claim despite illness, equitable tolling was not warranted); Moody v. Bayliner Marine Corp., 664 F. Supp. 232, 236 (E.D.N.C.1987) (panic disorder suffered by plaintiff did not constitute "exceptional circumstances"

---

[5]Without deciding whether mental incapacity entitles an individual to equitable tolling, the circuit court determined in both cases that the plaintiff did not present sufficient evidence to establish the exceptional circumstances necessary to toll the limitations period. Id.

11

> such that she was prevented from pursuing her claim). In <u>Bassett v. Sterling Drug, Inc.</u>, 578 F. Supp. 1244, 1248 (S.D. Ohio 1984), the court stated that equitable tolling for mental incapacity should be limited to "the objective standard of adjudication or institutionalization ⋯ [to] protect[ ] defendants against specious allegations of mental incompetence advanced in desperate efforts to save time-barred claims."

<u>Biester</u>, 77 F.3d at 1268.

Here, the plaintiff provides medical evidence to show that he has been diagnosed with a depressive disorder. *Response*, Exhibits 1, 6. However, the plaintiff does not provide any evidence to establish that the depressive disorder caused him to be unable to contact an EEO counselor from March 31, 2000, to April 4, 2001. The only evidence that addresses the time period in question is a letter from the plaintiff's personal friend which states that "[w]hen he was stressed, as in having to face his supervisor, he would get physically ill, at time vomiting for days at a time" and "[w]hen it came time to file a complaint with the EEO, Mr. Uhey couldn't do it, he delayed it to the point that it was I that finally made the call and submitted the original packet to the USPS EEO." *Response*, Exhibit 5, p. 2. The letter falls far short of establishing the "exceptional circumstances" discussed by the Tenth Circuit. There is no evidence that the plaintiff was declared incompetent or was institutionalized during the time in question, nor is there any evidence that the plaintiff's condition rendered him incapable of understanding and pursuing his legal rights.

The undisputed material facts establish that the plaintiff's contact with the EEO counselor was untimely. The plaintiff has failed to provide evidence sufficient to establish that he is entitled to equitable tolling. I respectfully RECOMMEND that the defendant's Motion be GRANTED

insofar as it seeks summary judgment on the plaintiff's disability claim for failure to exhaust administrative remedies.

## FMLA Claim

The defendant asserts that the plaintiff is unable to set forth any claim under the FMLA. *Motion*, p. 6.[6] The FMLA provides that employers must allow employees up to twelve weeks of leave in a year if the leave is requested for one of the purposes specified in the statute, including an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

To establish a prima facie case under FMLA, a plaintiff must show that he was entitled to FMLA leave; that he was denied his substantive rights under FMLA; and that a causal connection exists between the two. Dry v. Boeing Co., 92 Fed.Appx. 675, 677, 2004 WL 309323, at *3 (10th Cir. Feb. 19, 2004).

The plaintiff does not provide any evidence to establish a prima facie case under FMLA. I respectfully RECOMMEND that the defendant's Motion be GRANTED insofar as it seeks summary judgment on the plaintiff's FMLA claim.

## CONCLUSION

---

[6] The moving party bears the initial burden of "showing beyond a reasonable doubt that it is entitled to summary judgment." Trainor v. Apollo Metal Specialties, Inc., 318 F3d 976, 979 (10th Cir. 2002). The moving party may carry this burden "either by producing affirmative evidence negating an essential element of the nonmoving party's claim" or, as in this case, by "showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Id.

I respectfully RECOMMEND that Defendants's Motion be GRANTED and that summary judgment be granted in favor of the defendant on both of the claims against him.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 15, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge